**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

**DUSTIN CLIBURN**                                                                       **PLAINTIFF**

**v.**                                                                **CAUSE NO. 3:12-CV-238-CWR-LRA**

**THE MANUFACTURED HOME**                                                     **DEFENDANTS**
**CENTER, INC.** *d/b/a Woods Home*
*Center*; **JOHN DITTO, III; J. KANE**
**DITTO; JOE T. SCOTT**

**ORDER**

Before the Court is the defendants' motion to dismiss the plaintiff's Fair Labor Standards Act claim. Docket No. 18. After the Court entered an Order *sua sponte* converting the motion to one for summary judgment, the plaintiff responded, Docket No. 21, and the defendants replied, Docket No. 22. The motion will be denied without prejudice.

**I.    Factual and Procedural History**

On April 10, 2012, Dustin Cliburn filed his first amended complaint against defendants The Manufactured Home Center, Inc. *d/b/a* Woods Home Center; John K. Ditto, III; J. Kane Ditto; and Joe T. Scott. Docket No. 3, at 1. Cliburn started to work for The Manufactured Home Center in May 2010, pursuant to a written agreement. *Id.* at 2. But the defendants failed to pay him the sales commissions and profit-sharing it promised, failed to remit his garnished wages to the State of Mississippi, and failed to transfer a vehicle title into his name, among other allegations. *Id.* at 3-4. Cliburn further alleged that he was terminated without warning in October 2011. *Id.* at 4-5. Afterward, he said, the defendants defamed him in an effort to harm his future business opportunities. *Id.* at 5.

Cliburn specifically charged the defendants with willfully violating the Fair Labor Standards Act (FLSA) by failing to pay overtime, fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference. *Id.* at 6-8. He sought reinstatement, back pay, damages, and specific performance. *Id.* at 8-9.

The defendants denied Cliburn's allegations. Docket No. 13, at 1-16. Three of them – all but Joe T. Scott – then counterclaimed against Cliburn, alleging that he overstated the company's profits in order to wrongfully inflate his pay, broke his agreement with the defendants in several ways,

misappropriated assets, and created false records to hide his activities. *Id.* at 17. Their specific claims were breach of contract, breach of the covenant of good faith and fair dealing, conversion, fraud, negligent misrepresentation, unjust enrichment, abuse of process, tortious interference, and breach of fiduciary duty.[1] *Id.* at 16-26. They sought damages and other relief. *Id.* at 26.

## II.     Present Arguments

The defendants argue that Cliburn is not entitled to overtime because he was a salesman primarily engaged in selling trailers, who worked for a nonmanufacturing establishment that primarily sold trailers. Docket No. 19, at 4-5. He therefore falls into a statutory exception to FLSA overtime, they assert. *Id.* (citing 29 U.S.C. § 213). They have submitted an affidavit from John Ditto, the President of The Manufactured Home Center, attesting to the nature of the business and Cliburn's role in selling trailers. Docket No. 18-1. The defendants add that several prior courts have found mobile homes to be trailers within the meaning of the FLSA. Docket No. 19, at 5-6.

Cliburn's response first contends that this defense has been waived by the defendants' failure to include it in their answer. Docket No. 21, at 2. In the alternative, he argues that the word "trailer" refers to "normal transportation equipment like automobiles, trucks, and farm implements," not mobile homes. *Id.* at 2-3. For example, Cliburn points to United States Department of Labor (DOL) guidance stating that mobile homes are not "trailers" when they are placed "on a permanent foundation requiring extensive site preparation." *Id.* at 3-4 (quoting DOL Field Operations Handbook at 24L13(e)(1)). He has attached an affidavit in which he states that the mobile homes sold "were emplaced on a permanent foundation requiring extensive site preparation." Docket No. 21-2.

In rebuttal, the defendants deny that they waived their trailer salesman defense. Docket No. 22, at 1-2. As to the remaining issue, they reassert their prior arguments and attach additional evidence that the mobile homes sold were placed on "typical" foundations, not permanent foundations, which means they are trailers. *Id.* at 5.

## III.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

---

[1] "Defendants" will hereinafter refer to the three defendants that brought the counterclaim. They are the same defendants asserting the present motion for summary judgment.

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute. *Id.* at 56(c)(1). The Court views the evidence and draws reasonable inferences in the light most favorable to the non-movant. *Maddox v. Townsend and Sons, Inc.*, 639 F.3d 214, 216 (5th Cir. 2011).

IV.   Discussion

    A.   Waiver

Cliburn is correct that FLSA affirmative defenses are usually "waived if not pleaded." *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 317 (5th Cir. 1981) (citation omitted); *see* Fed. R. Civ. P. 8(c)(1). That rule operates to give plaintiffs notice and an opportunity to respond to the defenses the defendant has asserted. *See Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 467 (5th Cir. 2001).

"However, where the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) (quotation marks, brackets, and citation omitted). "An affirmative defense is not waived if the defendant raised the issue at a pragmatically sufficient time, and the plaintiff was not prejudiced in its ability to respond." *Id.* (quotation marks, brackets, and citation omitted).

While the defendants' answer asserted two FLSA defenses, this particular defense was not invoked. Docket No. 13, at 14. It was first mentioned by the defendants at a hearing on the plaintiff's motion to dismiss. That does not necessarily result in waiver, though, since the Fifth Circuit does "not take a formalistic approach to determine whether an affirmative defense was waived. Rather, [it] look[s] at the overall context of the litigation and ha[s] found no waiver where no evidence of prejudice exists and sufficient time to respond to the defense remains before trial." *Knoblauch*, 566 F.3d at 577 (citations omitted).

The overall context of this litigation does not suggest that Cliburn has been prejudiced by the defendants' post-answer invocation of the trailer salesman defense. After the defense was raised at the October 18, 2012, hearing, the Court offered to entertain a dispositive motion on the plaintiff's FLSA count. That motion followed on November 1; was converted to a summary judgment motion by Text Order on November 7 pursuant to *General Retail Servs., Inc. v. Wireless Toyz Franchise,*

3

*LLC*, 255 F. App'x 775, 784-85 (5th Cir. 2007); and was responded to by the plaintiff on November 26.[2] Cliburn had adequate time to respond to the specific argument that he is exempt from overtime because he primarily sold trailers.

It also is relevant that at this early stage of the litigation – where no Case Management Conference has been held, and therefore no deadline to amend the pleadings exists – the defendants would be entitled to move to amend their answer to plead the affirmative defense in question. Such motion would be granted, again given the early point we find ourselves in today. *See* Fed. R. Civ. P. 15(a)(2).

In sum, there is no evidence that Cliburn has been prejudiced by the defendants' failure to plead this affirmative defense in their answer. As a result, the Court will proceed to consider the merits of the defendants' argument.

### B.     The FLSA Exemption

The FLSA "requires employers to pay minimum wages, to pay employees for overtime and to keep records of hours worked." *Donovan*, 661 F.2d at 317 (citing 29 U.S.C. § 201 *et seq.*). The overtime provisions of the law, however, do not apply to "any salesman primarily engaged in selling trailers, boats, or aircraft, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling trailers, boats, or aircraft to ultimate purchasers." 29 U.S.C. § 213(b)(10)(B). "Exemptions from the Fair Labor Standards Act are to be narrowly construed against the employer, upon which the burden rests to show that it comes within the exemption." *Shultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61, 67 (5th Cir. 1970) (citations omitted).

It is not disputed that Cliburn was primarily engaged in selling mobile homes and was employed by a nonmanufacturing establishment that primarily sold mobile homes. The issue is whether mobile homes are "trailers" within the meaning of the FLSA.

The parties have not pointed to many decisions answering that question. One district court concluded without explanation that mobile homes are trailers within the meaning of the FLSA. *See Brennan v. Sullivan*, No. T-5049, 1973 WL 1186, *3 (D. Kan. May 25, 1973) ("The term 'trailers'

---

[2] On November 21, Cliburn moved for five additional days to respond to the motion for summary judgment. Docket No. 20. If his response required substantially more time or discovery, counsel could have asserted as much or filed a formal Rule 56(d) response. The absence of such a request suggests that he has not been prejudiced in his ability to respond to the affirmative defense.

as used in 29 U.S.C. § 213(b)(10) includes mobile homes."). Of course, that may prove only that the mobile homes at the heart of *that* case were trailers. It is not clear.

Other courts have found the issue to be slightly more nuanced. In 1970, for example, the Fourth Circuit adopted the Secretary of Labor's position that mobile homes have a "dual identity":

> He recognizes them as trailers for the purposes of the exemption to the extent that they are transported from place to place on their own wheels and suspension systems. But when a mobile home has been delivered to its site, mounted on a base, and connected to utilities, he argues, it loses its character as a trailer.

*Snell v. Quality Mobile Home Brokers Inc.*, 424 F.2d 233, 235 (4th Cir. 1970).

The Fifth Circuit considered some of the same issues that same year. In *Shultz*, the parties "stipulated that the word 'trailer' as used in the [Fair Labor Standards] Act includes mobile homes." *Shultz*, 428 F.2d at 62. That case involved "servicemen" that provided mechanical repair and construction work on mobile homes, not salesmen, but it remains relevant to our situation.

Like the Fourth Circuit, the *Shultz* court explained that "[t]he hybrid nature of a mobile home, however – as a vehicle when moving from place to place, and as a residence when permanently mounted on a stationary base – has engendered much of this controversy in determining the intent of the Legislature in excluding trailers from the Act's coverage." *Id.* "The question [of the mechanics' role] admittedly is a close one because of ambiguities in the Act which are not resolved by statutory definition. The statute defines neither 'mechanic' nor 'trailer' and our resort to dictionaries produces only further ambiguities because of the various shades of meaning ascribed to both terms." *Id.* at 63. The court ultimately concluded that the servicemen in question were more like construction workers than mechanics who worked on moving vehicles, and therefore that the statutory exemption was not applicable. *Id.* at 66.[3]

The available evidence and authorities support that the mobile home industry – or manufactured home industry, as it is now called – has changed since the above cases were decided. The Department of Labor now states that a mobile home should not be considered a trailer under the

---

[3] Moreover, in the earlier version of 29 C.F.R. § 779.372(c)(3), the term "trailer" was specifically defined as "including any nonpowered vehicle used for industrial, commercial, or personal transport or travel on the highways that is attached to the rear of a separately powered vehicle." 3 Emp't Cord. Compensation § 8.15 (2012). "Mobile home" fit within that definition for purposes of the exemption. However, the term "trailer" is no longer defined in the current version of 29 C.F.R. § 779.372(c)(3). *Id.*

5

FLSA when documents at the time of sale show "that parts of the transportation system are to be removed and that the mobile home is to be emplaced on a permanent foundation requiring extensive site preparation." Docket No. 21-1, at 2 (DOL Field Operations Handbook at 24L13(e)(1)). The next subsection clarifies that "[t]ypical installation on concrete pads with sewer and water connections, electricity, anchoring apparatus or cables, and 'skirting' is not considered permanent emplacement." *Id.* (DOL Field Operations Handbook at 24L13(e)(2)).[4]

Our parties agree that the mobile homes sold during Cliburn's employment were installed without the transportation system parts. But they differ on what kind of foundation the units were placed upon. Cliburn's affidavit recites that the foundations were permanent. Docket No. 21-2. Ditto's affidavit states that the vast majority of the mobile homes were placed on typical foundations: dirt or concrete pads with sewer and water connections, electricity, skirting, and anchoring. Docket No. 22-3.

Plainly, then, there is a fact dispute on this issue. And while Ditto's affidavit discusses what the documents at the time of sale showed – a relevant consideration, according to the DOL Field Operations Handbook – the lack of discovery in this case has prevented the plaintiff from reviewing that evidence and challenging Ditto's conclusion.

The defendants may respond that this dispute is a legal one suitable for immediate resolution. They are correct that "the ultimate decision whether an employee is exempt is a question of law." *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) (citation omitted). That said, the Fifth Circuit also stated in that case that "[t]he decision whether an employee is exempt under the Act is primarily a question of fact which must be reviewed under the clearly erroneous standard." *Id.* (quotation marks and citation omitted); *see also Vela v. City of Houston*, 276 F.3d 659, 677 (5th

---

[4] According to another federal agency, "[p]ermanent foundations must be constructed of durable materials; i.e. concrete, mortared masonry, or treated wood - and be site-built. It shall have attachment points to anchor and stabilize the manufactured home to transfer all loads, herein defined, to the underlying soil or rock. The permanent foundations shall be structurally developed in accordance with this document or be structurally designed by a licensed professional engineer for [vertical and lateral stability]." United States Dep't of Housing & Urban Development, Permanent Foundations Guide for Manufactured Housing, Sept. 1, 1996, Ch. 1, at 1, *available at* http://www.huduser.org/portal/publications/destech/permfound.html.

The DOL and HUD materials suggest that "permanent foundation" is a term of art that refers to the means by which the mobile home is secured to the ground, *not* the length of time the unit may remain in place. Just because a mobile home is placed permanently and lived in permanently does not necessarily mean that it is placed on a "permanent foundation."

Cir. 2001) (finding it not possible to apply a FLSA exemption as a matter of law where there was an "utter lack of probative evidence" on the issue). Before making a legal conclusion about Cliburn's status, it is important to first resolve the factual question of whether the mobile homes sold were placed on typical or permanent foundations.

## V.     Conclusion

The motion is denied without prejudice. The Court will rule on the plaintiff's outstanding motion to dismiss the defendants' counterclaims.

**SO ORDERED**, this the 28th day of December, 2012.

s/Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
